THE FEDERAL LAND BANK OF LOUISVILLE *v*. DINGFELTER & BALISH, INC.

[No. 16,068. Filed May 2, 1939.]

432

*John S. Grimes, Bowser & Bowser, J. F. Williamson* and *Roger D. Branigin,* for appellant.

*Rex S. Emerick,* for appellee.

CURTIS, C. J.—This was an action by the appellant, The Federal Land Bank of Louisville, against the appellee, Dingfelter & Balish, Inc., for the possession of certain real estate described in the complaint. The issues were joined upon the answer of the appellee in general denial to the appellant's complaint which was in one paragraph. The cause was tried before a jury resulting in a verdict for the defendant (appellee). A judgment was entered in accordance with the verdict. The appellant seasonably filed a motion for a new trial which was overruled and this appeal followed.

The error assigned in this court is the ruling on the motion for a new trial which contained the causes or grounds that the verdict of the jury is not sustained by sufficient evidence, is contrary to law, and alleged error of the court in refusing to give to the jury instruction number 1 tendered by the appellant.

The complaint contained the usual allegations of a complaint by one claiming to be the owner of and entitled to the possession of real estate against a tenant alleged to be holding over after the expiration of a written lease for the premises. As an exhibit to the complaint the appellant filed a copy of said lease. The exhibit, however, shows that the lease asserted by the appellant was never executed by it but that it was signed by the appellee. There is no doubt, however, but that the tenancy began under the terms of said written instrument. It provided that the tenancy was to run from September 21, 1935, to December 31 of the same year. The leased premises were farm lands.

The appellee defended the action mainly upon the ground that the term of the lease, by the oral agreement of the parties, had been extended to cover the year 1936 and that, therefore, the appellant was not entitled to the possession of said premises at the time the action was commenced. The appellee in its brief, in supplying some of the evidence omitted by the appellant, correctly summarized the evidence of two of its witnesses as follows: "In the spring of 1935, Mr. Milner and myself, on behalf of the defendant, put out some crops on the Whitt farm (being the farm in controversy). After September 21, 1935, after appellant's exhibit No. 1 had been signed by appellee, I talked with Mr. Chapman and Mr. Secrist, the gentlemen who are here and testified about a lease. I talked first with Mr. Chapman. I asked him about putting—you see there is two little pieces of land—five acres and fifteen—I asked him if we couldn't put out the five acres for hog pasture and also the fifteen acres and he said 'Yes.' I said: 'How would it be if we stayed and rented it for 1936?' and he said 'O. K., if it isn't sold you can have it' and so we went ahead. I also talked with Mr. Secrist over at his place over by Cromwell. Mr. Secrist said it would

be all right to go ahead and put the rye out and if the place wasn't sold we should have it for 1936, but they couldn't give us a 1936 lease in 1935. He (Secrist) said we could either pay cash or grain rent. That would be stipulated in the contract. After that we put out twenty acres in rye in the month of October, 1935, after I had these conversations with Mr. Secrist and Mr. Chapman. We prepared the seed bed putting out this rye and furnished the seed.

"In January, 1936, I asked Mr. Secrist—he was in the store one day and I said: 'When are you going to bring the lease?'; he said, 'Mr. Chapman will be along some of these days with that lease for thirty-six.' That was in 1936.

"I asked one of the representatives of Federal Land Bank if we could keep any cattle out there. I asked Mr. Secrist and also Mr. Chapman and they said 'All right.' Mr. Chapman never told me that I had to have the lease before we could harvest the rye. We used land outside of the twenty acres in rye. There was an oral lease agreed upon between us and the Bank for the year 1936.

"We discussed grain rent on a two-fifths basis.

"Mr. Secrist came down there one day and I was at the barn, and he said: 'Come and go with me and we will make an estimate of how much it will take to repair this house so I can take it to the contractor.' He was to get this house ready for us to go into."

Andrew M. Milner, connected with appellee, testified as follows:

"I was Secretary and Treasurer of Dingfelter & Balish and acting in that capacity in 1935. We had out fifteen acres of potatoes and five acres of beans in the Spring of 1935.

"I talked to Mr. Chapman about putting out the rye in the fall of 1935. I told him we had fertilized the potato ground rather heavy and I would like to cash in on

that the next year and put rye in there the next year. He said the farm was for sale, and that they would rather sell it, but if the farm wasn't sold we could have it. I told him that we would gamble that it wouldn't be sold—I knew the price they had on it, and I felt positive they would never sell it for that—he said we could have it if it wasn't sold and I said we would take our chances and go ahead and put it out, and he said 'all right.' After that we put out the rye on this land. I told him (Chapman) I preferred to rent on a cash basis but if not, we would rent on the customary fifty-fifty basis. He said 'That was O. K.' That is just what he said.

"On January 12, 1936, Mr. Chapman came for the check for the corn we had purchased and at that time I asked him if there was anything new, and he said there wasn't; that as far as he was concerned the deal was O. K. as we had talked last fall, and that they hadn't sold the place. I asked about when we could get our lease and I also sent Mr. Teders down in December and in January to get the written lease.

"I had rented that ground in the Spring (1935) without a lease and they (Bank) stuck by it—they never gave me a lease for that until September 21, and since they lived up to their word at that time I thought they would again. I rented the farm from Mr. Secrist in the spring of 1935.

"He (Secrist) told me everything was all right, if they didn't sell the farm. That it was O. K. to leave the property there since the farm wasn't sold."

It is to be noted that the man Secrist mentioned in the above testimony testified himself that acting for the appellant he looked up tenants and made arrangements with them to go on the various farms of the appellant to operate them as tenants. He also testified that in September, 1935, he drew the said written lease

between the appellee and the appellant and that upon its execution by the appellee, the appellee went ahead and occupied the land as tenant. The man Chapman heretofore mentioned in the evidence testified that he also was connected with the appellant and had authority to rent or lease farms in connection with the real estate department of the appellant.

There seems to be an abundance of evidence from which the jury could conclude that the men Secrist and Chapman each had authority or at least apparent authority to bind the appellant in the matter of leasing the land in question to the appellee. Under the circumstances it became a question of fact for the jury to determine whether or not the parties did extend the lease to cover the year 1936. The jury by the verdict necessarily concluded that such extension was made and we think that conclusion is amply sustained by the evidence.

Under the heading of propositions, points and authorities in the appellant's brief it discusses only one cause or ground of the motion for a new trial, to-wit, that the verdict of the jury is not sustained by sufficient evidence. It requires no citation of authority to the effect that the other grounds of the motion are thereby waived. Addressed to the one cause or ground of the motion the appellant merely states one proposition as follows: "The appellant proved the appellees were holding over after expiration of a lease and appellee failed to prove execution of a new lease." Under this proposition the appellant attempts to make four points; first, that the "appellant proved the expiration of a written lease specifically providing that the appellee should not have the right to plant a crop to be harvested in 1936." The second point is that "the only tenor of evidence introduced by appellee was to show preliminary negotiations for a new lease of part of the

real estate described in the complaint." Point three is that "appellee failed to prove any negotiations with agents of appellant having power to lease." Under this point is cited an authority. Point four is that "the negotiations shown by the evidence were too indefinite to constitute a new lease." Under this point is cited two authorities. The application of the above proposition and points is left entirely to the court. They give little or no consideration to the evidence supplied by the appellee in its brief as heretofore set out.

No reversible error is shown.

Judgment affirmed.