In re ROGERS WHOLESALERS, INC., Debtor.

ROGERS WHOLESALERS, INC., Debtor, Plaintiff,

v.

M.J. INDUSTRIES, Defendant.

Bankruptcy No. 82–823–JG.
Adv. No. A82–0709.

United States Bankruptcy Court, D. Massachusetts.

Oct. 4, 1983.

Gary Cruickshank, Riemer & Braunstein, Boston, Mass., for debtor, plaintiff.

Jack D. Glazer, Glazer & Franklin, Copiaque, N.Y., for defendant.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

The Complaint of the Plaintiff, Rogers Wholesalers, Inc., ("Rogers" or "the debtor") seeks to recover $50,106.49 for pharmaceutical goods sold and delivered by Rogers to the defendant, M.J. Industries ("M.J."). The defendant's Answer denies that it owes Rogers this amount. A trial was held on October 7, 1982. Based upon the testimony of the witnesses, Mr. John Nutter, President of Rogers, Mr. Omvig, Rogers's accounts receivable clerk, Stan Siever, President of M.J. and documentary evidence submitted by both the Plaintiff and the Defendant, the Court makes the following findings of fact.

Rogers ws in the business of distributing and selling drugs, vitamins, and other pharmaceutical products. In 1982 it had an agreement with Legend Cooperative, a group of one hundred and thirty-five drug stores, to ship goods to several retailers, including M.J. and bill the retailers for goods sold. The documentary evidence and testimony of Siever indicate that Rogers delivered to M.J. on January 26, 1982 $46,-360.44 worth of goods. The receipt dated January 26, 1982 is signed by Siever. Noted above his signature are the following words: "Subject to count and condition". Upon delivery, Siever observed that much of the shipment was damaged—bottles were loose, labels scratched, selling dates had expired, cases were leaking, discolored, open and unfilled. Defendant's Exhibit 4 is a sample of the open, discolored cartons containing bottles with expired dates. Thereafter, on January 28, 1982 Siever wrote to Mr. Ed Fahey, of Rogers explaining that many of the bottles were unsaleable as they were damaged and expired. Siever further stated that after completing an inventory of the shipment, he would contact Rogers with the results.

Thereafter, sometime in February 1982, Siever contacted Rogers, who sent an employee to Siever's drug store. Siever showed the employee the defective merchandise. The employee promised to get back to Siever on the dispute, but he did not. Siever contacted Flynn sometime thereafter but was unsuccessful in obtaining a credit for the bad merchandise.

M.J. sold approximately $11,000 of the shipment and discarded the balance of the shipment.

The question presented is whether M.J. is responsible for payment of the goods sold to it by Rogers, and, if so in what amount.

■ Where a buyer accepts goods, the seller is entitled to recover the full amount of the contract price. *Mass. General Laws Chapter* 106 *Section* 2–607(1); *Axion Corp. v. G.D.C. Leasing Corp.*, 359 Mass. 474, 269

**20**

N.E.2d 664 (1971). In this case, Rogers is entitled to recover any unpaid portion of its bill for goods accepted by M.J.

Acceptance occurs when the buyer does any act inconsistent with the seller's ownership, *Mass. General Laws Chapter* 106 *Section* 2–606(1)(c), signifies to the seller that he will retain the goods, *Mass. General Laws Chapter* 106 *Section* 2–606(1)(a), or where the buyer fails to make an effective rejection, *Mass. General Laws Chapter* 106 *Section* 2–606(1)(b). A rejection is effective where the buyer "seasonably" notifies the seller of his intent not to accept. *Mass. General Laws Chapter* 106 *Section* 2–602. Where a buyer makes an effective rejection he holds the goods at the seller's disposition, and has no obligation to pay the purchase price. *Mass. General Laws Chapter* 106 *Section* 2–602; 2–713; 2–714.

On an improper delivery a buyer has the right to accept any portion and reject the rest. *Mass. General Laws Chapter* 106 *Section* 2–601. A delivery of pharmaceutical goods may be considered unacceptable and in breach of the implied warranty of merchantability where the goods are unmerchantable because they are unfit for sale, outdated, and inadequately contained. See *Mass. General Laws Chapter* 106 *Section* 2–314.

■ Applying these principles to the facts of the present case, M.J. is not liable to pay for $35,167 worth of unmerchantable goods, and is responsible for payment of the $11,192 in goods it sold. By its conduct, M.J. accepted part and rejected part of the shipment. M.J. gave seasonable notice of its partial acceptance in its letter dated January 28, 1983. Although the letter did not particularize the amount of goods rejected, this was a sufficient rejection because it clearly put Rogers on notice that a major portion of the shipment was being refused. At this point the burden shifted to Rogers to cure the nonconforming delivery, which it never did. Although a Rogers employee visited M.J.'s premises in February 1982 he took no steps to provide proper saleable goods, or to credit M.J. for the defective goods. M.J. accepted $11,192 worth of goods when it sold them in its retail operation. Thus M.J. is liable to pay Rogers the contract price for these accepted goods which amounted to $11,192.

Accordingly, judgment shall enter for the Plaintiff in the amount of $11,192.