[Cite as *Dunn v. Ransom*, 2013-Ohio-5116.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

| | | |
|---|---|---|
| Thelma Dunn, et al., | : | Case No. 13CA837 |
| | : | |
| Plaintiffs-Appellees, | : | |
| | : | <u>DECISION AND</u> |
| v. | : | <u>JUDGMENT ENTRY</u> |
| | : | |
| George H. Ransom, et al., | : | |
| | : | **RELEASED: 11/8/13** |
| Defendants-Appellants. | : | |

_____
APPEARANCES:

William S. Cole, Jackson, Ohio, for appellants.

Richard M. Lewis, Christen N. Finley, and Suzanna T. King, THE LAW FIRM OF RICHARD M. LEWIS, L.L.C., Jackson, Ohio, for appellees.
_____
Harsha, J.

{¶1} Following our remand, Nathan and Michelle Maynard, Richard Beekman, and Betty M. Williams, Trustee of the Williams Family Trust, appeal the trial court's determination of the width of the implied and prescriptive easements over the Appellants' land. These easements provide access to the property of David Wyckoff, Gary Wyckoff, Thelma Dunn, and Nancy Gragg (collectively, the "Wyckoffs"). The Appellants contend the trial court erred when it made the easements 20 feet wide.

{¶2} We agree the court abused its discretion to the extent its decision gives the Wyckoffs access to the entire 20 feet for the purpose of ingress and egress to their property. The average width of the normally traveled portion of the easement appears closer to 10 feet. The court's decision in essence creates a two-lane road where there is only a one-lane road. However, it is not unreasonable, arbitrary or unconscionable for the Wyckoffs to have access to the entire 20 feet to allow for normal incidents to a

road, like the occasional need for passing and road maintenance.  Therefore, we affirm

the trial court's judgment in part, reverse it in part, and remand with instructions for the

court to modify its judgment as outlined below.

I.  Facts

{¶3}    This dispute involves a private dirt and gravel road, commonly known as

Spoon River Road ("SRR").  SRR connects to Rob Beekman Hill Road and travels from

it in a northwesterly direction, first passing through the property of Richard Beekman.

SRR later passes through the property of the Maynards, then the Williams Trust

property, and finally the Wyckoffs' property.  In *Dunn v. Ransom*, 4th Dist. Pike No.

10CA806, 2011-Ohio-4253 (*Dunn I*), we recounted in detail facts regarding the parties'

dispute over SRR.  The trial court found the Wyckoffs had an easement by implication

over the property of the Maynards and Williams Trust and that they had a prescriptive

easement over Richard Beekman's property.  In *Dunn I* we upheld these findings.  We

also found the court "failed to define in any respect the nature or width of the implied

and prescriptive easements, or what 'rights' the Wyckoffs or defendants had with

respect to the easements."  *Dunn I* at ¶ 113.  We remanded for the trial court to define

"the nature and rights of the implied and prescriptive easements found in this case and

for a judgment entry that clearly defines those rights."  *Id.*

{¶4}    On remand the parties filed briefs, and the court heard oral arguments.

Then the court issued a judgment entry in which it found, among other things, that:

"The location of the Plaintiffs' easement shall be ten (10) feet on either side of the

centerline as established by surveyor, Loren Purdom, in his survey drawing which is

Plaintiffs' trial exhibit twenty-eight (28) * * *."  In other words, the court made the

easements 20 feet wide.  This appeal followed.

## II.  Assignment of Error

{¶5}    The Appellants assign one error for our review:  "The trial court erred when it granted Plaintiffs an easement twenty feet wide."

## III.  Width of the Easements

{¶6}    In their sole assignment of error, the Appellants challenge the scope of the easements.  They contend the trial court's decision to make the easements 20 feet wide is against the manifest weight of the evidence.  We have previously stated that "[w]hen the intended dimensions of an easement are not explicitly expressed, determining the dimensions becomes largely a question of fact, and the trial court's finding will be upheld if it is not contrary to the manifest weight of the evidence."  *Hurst v. Baker*, 4th Dist. Gallia No. 99CA14, 2000 WL 1206533, *3 (Aug. 22, 2000).  *See Crane Hollow, Inc. v. Marathon Ashland Pipe Line, LLC*, 138 Ohio App.3d 57, 67, 740 N.E.2d 328 (4th Dist.2000).

{¶7}    But we have also stated that when the parties fail to explicitly express the dimensions, courts must determine them in part from "that which is reasonably necessary and convenient to serve the purpose for which the easement was granted."  *Crane Hollow, Inc.* at 67.  *See also Munchmeyer v. Burfield*, 4th Dist. Washington No. 95CA7, 1996 WL 142579, *3 (Mar. 26, 1996) ("The majority rule is that in cases of general grants of right-of-way which do not expressly describe dimensions, courts will fix a width, length, etc. that is 'reasonable' to accomplish the purposes of the easement.").  This emphasis on reasonableness suggests that a court has discretion.  Thus, we must clarify the appropriate standard of review.

**{¶8}** 1 Restatement of the Law 3d, Property (Servitudes), Section 4.1, at 496-497 (2000) states:

> (1) A servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created.
>
> (2) Unless the purpose for which the servitude is created violates public policy, and unless contrary to the intent of the parties, a servitude should be interpreted to avoid violating public policy. Among reasonable interpretations, that which is more consonant with public policy should be preferred. (Emphasis deleted.)

**{¶9}** When no granting instrument exists or when the instrument is unclear, a trial court's findings on what the parties' intent was and for what purpose the easement was created are largely factual issues. *See Munchmeyer* at \*3 (explaining that when a granting instrument fails to describe the dimensions of an easement at all or does so inadequately, courts may use extrinsic evidence to determine the parties' intent, and "[w]here the determination of the parties' intent relies upon extrinsic sources, the issue becomes largely factual in nature."). Therefore, we apply a manifest weight of the evidence standard of review to the court's factual findings. *See Dyrdek v. Dyrdek*, 4th Dist. Washington No. 09CA29, 2010-Ohio-2329, ¶ 15 ("Appellate courts ordinarily review factual determinations under a manifest-weight-of-the-evidence standard.").

**{¶10}** But as Section 4.1(2) of the Restatement of the Law 3d, Property (Servitudes) suggests, it is possible that more than one reasonable interpretation exists of a servitude like an easement. "The very essence of discretion is the power to choose among a range of available options." *State v. Swayne*, 4th Dist. Adams Nos. 12CA952-12CA954, 2013-Ohio-3747, ¶ 36. Therefore, in the case of implied and prescriptive easements, where there is obviously no granting instrument, we find a trial court has

discretion to fix the easement's dimensions.  *See Keish v. Russell*, 4th Dist. Athens No. 98CA01, 1998 WL 574369, *1 (Sept. 10, 1998) ("In our view, a prescriptive easement is essentially an equitable remedy.  Accordingly, the trial court must be afforded broad discretion in fashioning its remedy.  Where one or more ways are available, the trial court is entitled to use its discretion and select the most reasonable route under all the circumstances.").  *See generally Cadwallader v. Scovanner*, 178 Ohio App.3d 26, 2008-Ohio-4166, 896 N.E.2d 748, ¶ 39, fn. 5, ¶ a (12th Dist.) (stating implied easements are also equitable remedies).

{¶11}  Thus, we review the trial court's ultimate ruling on the easement's dimensions for an abuse of discretion.  *See by way of analogy Mann v. Mann,* 4th Dist. Athens No. 09CA38, 2011-Ohio-1646, ¶ 13 (explaining that in divorce proceedings, we ultimately review a division of property for an abuse of discretion but will not disturb a trial court's factual findings unless they are against the manifest weight of the evidence). The phrase "abuse of discretion" connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary.  *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).  However, the court's interpretation of the easement should give effect to the parties' intent if can be ascertained, carry out the purpose for which the easement was created, and comport with the rules on public policy.

{¶12}  The Appellants complain that certain portions of SRR have been described as a "path," which they suggest means the easements over SRR cannot be 20 feet wide.  They also highlight the testimony of Loren Purdom, a land surveyor the Wyckoffs hired.  He viewed the properties at issue in January or February 2002. Purdom explained that for one of the maps he prepared, Plaintiff's Trial Exhibit 28, he

found what appeared to be the center of SRR. He drew a center line on the map and then drew lines to show what an easement that went 10 feet out from the center line on each side would look like. Purdom admitted that the width of the traveled road he observed was not 20 feet wide – it was less than that. He explained that the width of the "traveled road" he observed is depicted on Exhibit 28 between "gold or reddish-looking" colored lines. Exhibit 28 contains a scale, and from this exhibit, it is apparent that the "traveled road" Purdom observed is not straight and varied in width – the road is less than 10 feet wide in some spots and approximately 15 feet wide in at least one spot. It appears on average the "traveled road" is roughly 10 feet wide.

{¶13} The court did not make specific findings about the intent behind the easements. However, the rationale underlying an implied easement is "that whenever one conveys property he includes in the conveyance whatever is necessary for its beneficial use and enjoyment and retains whatever is necessary for the use and enjoyment of the land retained." *Trattar v. Rausch*, 154 Ohio St. 286, 291, 95 N.E.2d 685 (1950). The "traveled" portion of SRR (at least as it existed in 2002) is for the most part a winding, one-lane road defined by dirt or gravel. The Wyckoffs argue that SRR was "more likely than not wider in 1946 than in 2002" because there is evidence people used the road more in the past than in recent years. But the fact that the road may have been travelled more in the past does not necessarily mean it was wider then too.

{¶14} Although it is certainly possible the width of SRR has changed over time, the Wyckoffs offered no evidence that what is now a one-lane road was historically a two-lane road. Therefore, the only reasonable conclusion is that when Calvin Williams severed his properties in 1946, he and the buyer intended that the Wyckoff property

would have an easement for purposes of ingress and egress over the visibly used, existing one-lane road. A 10 foot wide easement would give effect to that intent.

{¶15} However, the court could logically conclude that Calvin Williams and the buyer intended that the Wyckoff property have an easement over SRR *and* land bordering it to account for things like passing vehicles and road maintenance. We agree with the Appellants that the record lacks explicit evidence about vehicles passing each other on SRR. However, it is clear that multiple people have owned and lived on property bordering SRR over the years. Common sense tells us that, from time to time, vehicles would have passed each other on the road. It is illogical to think that Calvin Williams and the buyer would have intended that if Calvin met another vehicle on the property of the Williams Trust or Maynards, he would have to back his vehicle up or down SRR rather than simply pull off the road briefly to let the other vehicle pass.

{¶16} Moreover, the record contains evidence that part of SRR is close to a creek. From Plaintiff's Trial Exhibit 28, it appears the road passes over the creek twice on the Williams Trust property. The record also contains evidence that in the past, parts of the road have washed out due to heavy rains. George Ransom, who previously owned the Maynard property, testified that when he owned the land he put in a culvert and ditch to keep SRR "dry." Richard Beekman also testified about the existence of ditches and culverts on his property. This evidence leads to the natural inference that in 1946, SRR was just as prone to being washed out as it has been in more recent times. Clearly Calvin Williams could not have accessed what is now the Wyckoff property if the road washed out. To combat this problem, his easement would have to extend beyond the traveled road for maintenance purposes.

{¶17} Thus, the court could reasonably conclude from the evidence that Williams and the buyer of his land in 1946 intended for the implied easements to be wider than the traveled roadway for purposes of activities that are normal incidents to a road, like the need for passing and maintenance. A 20 feet wide easement gives effect to that intent.

{¶18} Regarding the parties' intent surrounding creation of the prescriptive easement, "[s]ince the servitude created by adverse use arises from the failure of the landowner to take steps to halt the adverse use, interpretation of the prescriptive servitude focuses on the reasonable expectations of the landowner. The relevant inquiry is what a landowner in the position of the owner of the servient estate should reasonably have expected to lose by failing to interrupt the adverse use before the prescriptive period had run." 1 Restatement of the Law 3d, Property (Servitudes), Section 4.1, Comment h, at 502. "The dimensions of prescriptive easements for roads, particularly public roads, may extend beyond the traveled way to include ditches, shoulders, and passing areas reasonably necessary to use of the road. The underlying rationale is that the owner of the servient estate should have anticipated that allowing use as a public roadway would result in establishment of rights to create the normal incidents of a roadway in addition to rights to continue use of the traveled way." *Id.* at Section 4.8, Comment e, at 562.

{¶19} Here, the trial court could conclude that a landowner in Beekman's position should have reasonably expected that the prescriptive easement would include the "traveled road" for the purpose of ingress and egress. A landowner would not expect that prescriptive use of a one-lane road would lead to the creation of a two-lane

road over his property. Nonetheless, the landowner should reasonably expect that the easement would include some land beyond the traveled road to accommodate for the normal incidents to a roadway, such as passing and road maintenance. Again, SRR is for the most part a one-lane road that multiple people have used to access their properties over the years. It is winding, composed of either gravel or dirt depending on the location, and prone to wash outs. It would be unreasonable to expect the Wyckoffs to back up on such a road if they were in a vehicle and encountered another vehicle on SRR coming from the opposite direction. And it would be unreasonable if the Wyckoffs could not enter the land immediately next to SRR to maintain culverts and ditches that help keep the road passable.

**{¶20}** The trial court also made the following findings, which the Appellants do not dispute. The court found the Wyckoffs "established the historical use of the easements to be for the purposes of accessing residences that were located on what is now the Plaintiff's land, accessing a saw mill operated by a prior owner, timbering land owned by the Plaintiffs or their parents, and recreational purposes * * *." And the court found that "[t]he evidence established that travel over the easement path, commonly known as [SRR], was on foot, by automobiles, by trucks, on horses, on four wheeler ATVs, by tractor, and by motorcycle." The court determined the Wyckoffs could use their easements "for ingress and egress to their property for residential purposes, timbering, and recreation consistent with the prior use." And the court found the Wyckoffs "shall have the right to travel their easements on foot, by tractor, by truck, by automobile, by four wheeler ATV, by horse, and by other similar modes of travel not inconsistent with the specified modes of travel." The court also ordered the Wyckoffs to

maintain and repair the easements.  A width of 10 feet is sufficient to satisfy the purpose of normal ingress and egress to the Wyckoff property.  And a width of 20 feet is sufficient to satisfy the purpose of road maintenance and allow for the existence of other incidents to a roadway, like passing.

{¶21}  Based on the foregoing, we conclude that the trial court's decision to give the Wyckoffs unrestricted access to the entire 20 feet for purposes of regular travel unreasonable.  The court's decision does not comport with the evidence and fails to recognize the principle that implied and prescriptive easements are disfavored as an infringement on the servient estate.  However, the 20 foot width is not unreasonable to accommodate normal incidents of a roadway, like maintenance and passing.

{¶22}  Therefore, we overrule the sole assignment of error in part and affirm it in part.  We reverse the trial court's decision to the extent it gives the Wyckoffs access to the entire 20 feet for regular travel.  We remand with instructions for the court to modify its judgment to make the location of the implied and prescriptive easements over the Appellants' land, for purposes of ingress and egress to the Wyckoff property, the five feet on either side of the centerline established by surveyor Loren Purdom in Plaintiff's Trial Exhibit 28.  However, for purposes of engaging in activities that are normal incidents to roadways, such as passing and maintenance, the location of the easements on the Appellants' land shall encompass the ten feet on either side of the centerline.[1]

JUDGMENT AFFIRMED IN PART,
REVERSED IN PART,
AND CAUSE REMANDED.

---

[1] The Appellants complain that the language in the trial court's entry improperly expands the width of the express easement John and Gertrude Beekman, who were originally defendants, gave the Wyckoffs prior to the Beekmans' dismissal from the lawsuit.  We fail to see how the Appellants have standing to raise this issue on behalf of the Beekmans, so we disregard it.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED IN PART, REVERSED IN PART, and that the CAUSE IS REMANDED.  The Appellants and Appellees shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, P.J. & Abele, J.:  Concur in Judgment and Opinion.

For the Court


BY: _____
        William H. Harsha, Judge



### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**