[Cite as *Pinkerton v. Salyers*, 2015-Ohio-377.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| DAVID PINKERTON, | : | Case No. 13CA3388 |
| Plaintiff-Appellee/ Cross-Appellant, | : | |
| | : | |
| v. | | DECISION AND |
| | : | JUDGMENT ENTRY |
| JOHN L. SALYERS, JR., ET AL., | : | |
| Defendants-Appellants Cross-Appellees. | : | **RELEASED:  1/29/2015** |

_____

APPEARANCES:

William S. Cole, Cole, Kirby & Associates, L.L.C., Jackson, Ohio, for appellants/cross-appellees.

Thomas M. Spetnagel, Law Offices of Thomas M. Spetnagel, Chillicothe, Ohio, for appellee/cross-appellant.
_____

Harsha, J.

{¶1}    David Pinkerton filed an action to quiet title in his property and for a judgment declaring that David A. Salyers, trustee, and others had no easement across his property to the Salyers' adjacent land.  After the Salyers answered and counterclaimed, the trial court found that the Salyers had established a private easement by prescription and estoppel across Pinkerton's property.  The trial court determined that the easement was 10-feet wide and that it was restricted to the Salyers' use for farming, hunting, and other agricultural purposes.  The Salyers appealed from the trial court's limitations on the easement, and Pinkerton cross-appealed from the declaration of the easement.

{¶2} In Pinkerton's cross-appeal he asserts that the trial court erred in granting the Salyers a prescriptive easement because the Salyers failed to prove their use of the property was adverse. We reject Pinkerton's claim that the judgment is against the manifest weight of the evidence because the record contains evidence that the Salyers used the access road without permission from Pinkerton and his predecessors in interest. Under these circumstances, the trial court did not clearly lose its way and create such a manifest miscarriage of justice that its judgment must be reversed.

{¶3} In his second assignment of error Pinkerton contends that the judgment entitling the Salyers to an easement by estoppel is against the manifest weight of the evidence. Pinkerton's contention is meritless because Pinkerton's predecessors in interest permitted the Salyers to spend money to gravel the access without objection, thereby estopping Pinkerton from denying the easement.

{¶4} In their appeal the Salyers argue in their first assignment of error that the trial court erred in limiting their use of the easement solely for the historical purposes of hunting, farming, and agriculture. They claim that their use of the easement should be unlimited, as long as it is reasonable. However, prescriptive easements and easements by estoppel are disfavored because they result in forfeiture of land without compensation. Moreover, such an easement holder may not increase the burden upon the servient estate by engaging in a new and additional use of the easement. The trial court did not abuse its discretion in restricting the use of the easement to its primary historical uses for hunting, farming, and agricultural purposes.

{¶5} In their second assignment of error the Salyers claim that "the trial court erred by limiting the use of that easement to Defendants." However, the private

easement necessarily includes the right of guests and invitees of the Salyers to reasonable use of the easement. Thus, the trial court did not abuse its discretion in limiting the easement.

{¶6}    We affirm the judgment of the trial court.

I. FACTS

{¶7}    In 2010 Pinkerton purchased an 82.25-acre tract (82-acre tract) of real property on Mount Tabor Road in Huntington Township, Ross County, Ohio.  David A. Salyers, trustee of the John L. Salyers, Jr. and Alma L. Salyers revocable living trusts, has owned the 46.191-acre tract (46-acre tract) of real property since his parents, the trust beneficiaries, transferred it to him in 1998.  The Salyers' property is adjacent to and northwest of Pinkerton's property, which abuts Mount Tabor Road.

{¶8}    In March 2012, Pinkerton filed a complaint in the Ross County Court of Common Pleas against the Salyers.  He requested that the court quiet title to his property by declaring that the Salyers had no interest in his 82-acre property, including any claimed right-of-way across his property to access their 46-acre tract.  He also sought damages for the Salyers' trespass on his property relating to their installation of a gate and posting of signs for their use of the right-of-way.  In their counterclaim the Salyers alleged that they had an easement by prescription, an implied easement, an easement by necessity, and an easement by estoppel over Pinkerton's property.  They requested a court order establishing their right to cross Pinkerton's property and permanently enjoining Pinkerton from obstructing their access.  A bench trial produced the evidence that follows.

{¶9}    John L. Salyers, Jr.'s parents purchased the property, as well as a neighboring 52-acre tract that abutted Mount Tabor Road, in 1939.  According to Salyers they purchased the property from the Walkers, who showed him and his father the access road from Mount Tabor Road across the 82-acre tract to their 46-acre tract. He noted that "[w]hen we bought the place, the people sa[id] this is the right [of] way to that piece of property."  But he did not dispute that the record showed his parents bought the property from the Moores, not the Walkers.  He did not agree that someone who owned the property before Pinkerton specifically gave him permission to use the access road; instead, he testified that "since nobody stopped me I had permission."

{¶10}  The Salyers and their invitees, including friends, neighbors, and workers, have used the path from Mount Tabor Road across Pinkerton's property to the 46-acre tract since John Salyers, Jr.'s parents purchased it in 1939. This stopped when Pinkerton precluded them from doing so in 2012.  The Salyers and their invitees have used the right-of-way across the Pinkerton property to get to their property by horses, four-wheelers, tractors, trucks, campers, and walking, primarily for farming and hunting. Although John Salyers, Jr.'s parents attempted to transfer the 46-acre tract to him in 1945 and the adjacent 52-acre tract to his nephew George in 1964, the attached deeds were mistakenly switched.  Nevertheless, during this period, John Salyers, Jr. controlled the 46-acre tract, maintained it, and paid taxes on it. The mistake was eventually corrected in 1990, when the appropriate deeds were given to him and his nephew.

{¶11}  John Salyers, Jr. maintained the roadway by mowing it and spending $1,400 to gravel it before Mead bought the Pinkerton property in 1986.  A title search of the parties' properties revealed no express written easement from Pinkerton or his

predecessors to the Salyers or their predecessors.  However, aerial photographs confirmed the existence of the right-of-way across the Pinkerton property from Mount Tabor Road to the Salyers' 46-acre tract as far back as 1938 and continuing through 2011.  Neighbor Alvin Wade noted that the roadway was apparent 30 years ago.  And according to neighbor Matt Hopkins, he could access the Salyers' property by driving his tractor over the roadway across Pinkerton's property without any trouble because the road had a "hard bottom" on it.  Neighbor Dean Arrowood described it as a "pretty good road."

{¶12}  In 1986, when Mead purchased the Pinkerton property for forestry operations, it contacted John Salyers, Jr. to ask him for his permission to put posts and a cable across the right-of-way.  John Salyers, Jr. used a lock for the cable to access the right-of-way.  For the last 26 years, the Salyers have not actively farmed their 46-acre tract because it is in the Conservation Reserve Program, a government set-aside program that requires him to mow the field every half-year.  They still hunt on their property and maintain food plots for the deer.  When Pinkerton bought the 82-acre tract in 2010, both he and the Salyers had their own locks and either could let the cable down to access the right-of-way to the Salyers' 46-acre tract.  In 2011, Pinkerton told John Salyers, Jr. that he and neighbor Dennis Garman could use the roadway to get to the Salyers' field and hunt, but in 2012, Pinkerton denied the Salyers access to the road. Without use of the right-of-way across Pinkerton's property, the Salyers cannot access their 46-acre property.  No one had ever stopped the Salyers and their invitees from using the road until Pinkerton did in 2012.

{¶13} After some procedural wrangling, the trial court entered judgment finding that the Salyers had established a private easement by prescription and estoppel across Pinkerton's property to theirs. The trial court also determined that the easement was 10-feet wide from Mount Tabor Road to the Salyers' tract, restricted the easement to the Salyers' private use and limited it to farming, hunting and other agricultural purposes only. This appeal and cross-appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶14} In their appeal, the Salyers assign the following errors:

1. After finding Defendants have an easement across Plaintiff's property, the trial court erred in limiting Defendants' use of said easement solely for hunting, farming and agricultural purposes.

2. After finding Defendants have an easement across Plaintiff's property, the trial court erred in limiting the use of that easement to Defendants.

{¶15} In his cross-appeal, Pinkerton assigns the following errors:

1. The lower court erred in granting cross-appellees a prescriptive easement.

2. The lower court erred in granting cross-appellees an easement by estoppel.

## III. EASEMENTS & STANDARD OF REVIEW

{¶16} "An easement is 'the grant of a use on the land of another.' " *State ex rel. Wasserman v. Fremont*, 140 Ohio St.3d 471, 2014-Ohio-2962, 20 N.E.2d 664, ¶ 28, quoting *Alban v. R.K. Co.*, 15 Ohio St.2d 229, 231-232, 239 N.E.2d 22 (1968). This appeal involves "easements appurtenant," which are "easements that typically benefit and/or burden two separate parcels of land, i.e., the dominant tenement (the land benefited) and the servient tenement (the land encumbered by the easement)." *Dunn v. Ransom*, 4th Dist. Pike No. 10CA806, 2011-Ohio-4253, ¶ 29. "An easement may be

created by specific grant, prescription, or implication that may arise from the particular set of facts and circumstances." *Fitzpatrick v. Palmer*, 186 Ohio App.3d 80, 2009-Ohio-6008, 926 N.E.2d 651, ¶ 22 (4th Dist.). Adverse possession, in general, and easements by prescription and estoppel are disfavored because they result in forfeiture of land without compensation. *See Grave v. Koch,* 81 Ohio St.3d. 577, 580, 692 N.E.2d 1009 (1998).

{¶17} When there is no specific grant of an easement, the recognition of an easement is disfavored and the party claiming an easement must establish its creation by clear and convincing evidence. *Fitzpatrick.* at ¶ 23, 25-26 (person who claims an easement by prescription bears the burden to establish it by clear and convincing evidence); *Gnomes Knoll Farm, Inc. v. Aurora Inn Operating Partnership, L.P.*, 11th Dist. Geauga No. 93-G-1780, 1994 WL 321576, *9 (June 30, 1994) (applying the same "stringent standard" to a claim of easement by estoppel). Clear and convincing evidence is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 18, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶18} Pinkerton's cross-appeal challenges the trial court's determination that the Salyers established the presence of an easement by prescription and by estoppel by the requisite clear and convincing evidence. In determining whether a trial court based

its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof."  *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990).  *Accord In re Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), citing *Cross* ("Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof.").  When an appellate court reviews whether a trial court's decision is against the manifest weight of the evidence, the court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed.  *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20 (clarifying that the same type of manifest-weight analysis applies in civil and criminal cases); *In re M.M.*, 4th Dist. Meigs No. 14CA6, 2014-Ohio-5111, ¶ 22 (applying this standard in a case that involved a burden of proof of clear and convincing evidence).  "Because the trial court is best able to view the witnesses, observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the witnesses, a reviewing court will presume that the trial court's findings of fact are accurate."  *Cadwallader v. Scovanner*, 178 Ohio App.3d 26, 2008-Ohio-4166, 896 N.E.2d 748, ¶ 9 (12th Dist.), quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).  We will reverse a judgment as being against the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the judgment.  *M.M.* at ¶ 24.

**{¶19}** The Salyers contest the trial court's limitation of the easement to their private use for farming, hunting, and other agricultural purposes.  When no granting instrument exists, a trial court must determine the parties' intent and the purpose for the easement from the historical facts, rather than a document. Thus, we apply a manifest-weight standard to these issues.  *Dunn v. Ransom*, 4th Dist. Pike No. 13CA837, 2013-Ohio-5116, ¶ 9.  But because easements created by prescription and estoppel are equitable remedies, the trial court's determination of the limits of the easement is vested within its considerable discretion, and we will not reverse the determination absent an abuse of that discretion.  *Id.* at ¶ 10-11, citing *Keish v. Russell*, 4th Dist. Athens No. 98CA01, 1998 WL 574369, *1 (Sept. 10, 1998) ("In our view, a prescriptive easement is essentially an equitable remedy.  Accordingly, the trial court must be afforded broad discretion in fashioning its remedy.  Where one or more ways are available, the trial court is entitled to use its discretion and select the most reasonable route under the circumstances"); *Arkes v. Gregg*, 10th Dist. Franklin No. 05AP-202, 2005-Ohio-6369, ¶ 27 ("Several courts * * * recognize the equitable remedy of estoppel to create an easement").

IV. LAW AND ANALYSIS

A. Jurisdiction

**{¶20}**    Before addressing the merits of the parties' assignments of error, we must determine whether this appeal and cross-appeal are properly before us.  " 'An appellate court can review only final orders, and without a final order, an appellate court has no jurisdiction.' "  *State v. Anderson*, 138 Ohio St.3d 264, 2014-Ohio-542, 6 N.E.3d 23, ¶ 28, quoting *Supportive Solutions, L.L.C. v. Electronic Classroom of Tomorrow*,

137 Ohio St.3d 23, 2013-Ohio-2410, 997 N.E.2d 490, ¶ 10.  An order of a court is a final appealable order only if the requirements of both R.C. 2505.02 and, if applicable, Civ.R. 54(B), are met.  *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 541 N.E.2d 64 (1989), syllabus.  The judgment appealed here, which grants an easement by prescription and estoppel to the Salyers over Pinkerton's property and determines the usage and dimensional limitations of the easement, is a final order under R.C. 2505.02(B)(1) because it affected a substantial right and determined the action.

**{¶21}**  But Civ.R. 54(B) applies in cases involving multiple claims or multiple parties. It requires the court to make an express determination that there is no just reason for delay to make an order adjudicating fewer than all the claims or the rights of fewer than all the parties appealable.  *State ex rel. Scruggs v. Sadler*, 97 Ohio St.3d 78, 2002-Ohio-5315, 776 N.E.2d 101, ¶ 6-8.  The trial court's judgment did not expressly resolve Pinkerton's trespass claim or the Salyers' implied-easement and easement-by-necessity counterclaims, although the trial court and the parties appeared to resolve them at the conclusion of the trial.  *See State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 83, quoting *Schenley v. Kauth*, 160 Ohio St. 109, 113 N.E.2d 625 (1953), paragraph one of the syllabus (" 'A court of record speaks only though its journal and not by oral pronouncement or mere written minute or memorandum' ").  Nor did the trial court make an express determination in its judgment that there was no just reason for delay.

**{¶22}**  Nevertheless, " 'even though all the claims or parties are not expressly adjudicated by the trial court, if the effect of the judgment as to some of the claims is to render moot the remaining claims or parties, then compliance with Civ.R. 54(B) is not

required to make the judgment final and appealable.' " *State ex rel. A & D Ltd. Partnership v. Keefe*, 77 Ohio St.3d 50, 57, 671 N.E.2d 13 (1996), quoting *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 21, 540 N.E.2d 266 (1989); *see also State ex rel. Whitehead v. Sandusky Cty. Bd. of Commrs.*, 133 Ohio St.3d 561, 2012-Ohio-4837, 979 N.E.2d 1193, ¶ 14.  Because it recognized the Salyers' right-of-way over Pinkerton's property, and granted an easement by prescription and by estoppel, the trial court in effect denied or rendered moot the parties' remaining claims of trespass and easement by implication and necessity. Thus, we have jurisdiction to address the merits of the parties' assignments of error.

B. Cross-Appeal

1. Prescriptive Easement

**{¶23}**  Pinkerton asserts that the trial court's determination that the Salyers have a prescriptive easement is against the manifest weight of the evidence.  "Ordinarily a party seeking a prescriptive easement 'must demonstrate clear and convincing evidence of open, notorious, adverse, and continuous use of the easement for a 21-year period.' " *Queen v. Hanna*, 2012-Ohio-6291, 985 N.E.2d 929, at ¶ 37 (4th Dist.), quoting *Dunn*, 4th Dist. Pike No. 10CA806, 2011-Ohio-4253, at ¶ 77.  Pinkerton does not dispute that the Salyers established the open, notorious, and continuous use of the easement for the 21-year period by the required clear and convincing evidence.

**{¶24}**  Instead, he claims that the Salyers did not establish that their use of the access trail on the Pinkerton's property was adverse. "Use of a claimed prescriptive easement is 'adverse' when it is without the permission of, or inconsistent with the rights of the true property owner." *Dunn* at ¶ 91, citing *Crawford v. Matthews*, 4th Dist. Scioto

No. 97CA2555, 1998 WL 720734, *3 (Sept. 21, 1998). "Adversity or hostility does not require there to be a heated dispute between the legal owner and prescriptive claimant." *Dunn* at ¶ 91. "Whether a use is adverse or permissive depends upon the facts of each particular case." *Crawford* at *3.

**{¶25}** Pinkerton claims that John Salyers, Jr. admitted that his family's use of the trail was permissive and thus non-adverse when Salyers testified that people told him and his parents about the right-of-way upon their purchase of the 46-acre tract. He also relies on testimony by the Salyers' neighbors and invitees that they assumed John Salyers Jr. was authorized to use the right-of-way so as to permit them to use it. And Pinkerton further cites Mead's use of a locked gate to block access to the trail, while allowing John Salyers, Jr. to use his lock and key to access the right-of-way.

**{¶26}** None of the cited testimony indicates that Pinkerton's predecessors in title to the 82-acre tract gave the Salyers permission to cross it. Instead, the evidence can reasonably be interpreted to mean that the owners of the Pinkerton tract recognized the Salyers' right to an easement over their property. Indeed, Mead contacted John Salyers, Jr. to ask for *his* permission to put posts and a cable at the beginning of the right-of-way; Salyers did not ask Mead for its permission to do so. John Salyers, Jr.'s testimony that "because nobody stopped him, he had permission" implies that no one gave him permission.

**{¶27}** As one commentator has observed, "[a]dversity, when it comes to Ohio, is not a difficult test." Kuehnle and Levey, *Ohio Real Estate Law*, Section 26:15 (2014). "Use of a right-of-way over another's property to access one's own land constitutes adverse use." *McDowell v. Zachowicz*, 11th Dist. Ashtabula No. 2010-A-0033, ¶ 28;

*Pavey v. Vance*, 56 Ohio St. 162, 46 N.E. 898 (1897), paragraph one of the syllabus ("Where one uses a way over the land of another without permission as a way incident to his own land, and continues to do so with the knowledge of the owner, such use is, of itself, adverse, and evidence of a claim of right; and, where the owner of the servient estate claims that the use was permissive, he has the burden of showing it").

**{¶28}** The record is replete with evidence that the Salyers used the right-of-way across the Pinkerton property to access their property. Having established a prima facie case that their use was adverse, it was then incumbent upon Pinkerton to show that their use was instead permissive. *Pavey* at paragraph one of the syllabus; *Harris v. Dayton Power & Light*, 2d Dist. Montgomery No. 25636, 2013-Ohio-5234, ¶ 13, quoting *Goldberger v. Bexley Properties*, 5 Ohio St.3d 82, 84, 448 N.E.2d 1380 (1983) ("If the claimant makes a prima facie case, then the burden shifts to the owner of the servient property to show that the use was permissive and, therefore, not adverse").

**{¶29}** Finally, the fact that Pinkerton gave John Salyers, Jr. permission to use the right-of-way to access his adjoining tract in 2011 is irrelevant because by that time, the Salyers' interest in the prescriptive easement had been perfected. *Harris* at ¶ 13, citing *Wood v. Village of Kipton*, 160 Ohio App.3d 591, 2005–Ohio–1816, 828 N.E.2d 173, ¶ 22–24 (9th Dist.) ("once the claimant's use of the property has been open, notorious, and adverse to the servient property owner for a continuous period of 21 years, it is irrelevant whether the servient property owner subsequently grants the claimant permission to use the property").

**{¶30}** The trial court's determination that the Salyers established that their use was adverse to Pinkerton and his predecessors was not against the manifest weight of

the evidence.  The trial court did not clearly lose its way and create such a manifest miscarriage of justice so as to require reversal.  We overrule Pinkerton's first assignment of error.

## 2. Easement by Estoppel

**{¶31}**  In his second assignment of error Pinkerton contends that the trial court erred in granting the Salyers an easement by estoppel.  Again Pinkerton claims that the trial court's judgment is against the manifest weight of the evidence. This contention is also meritless.

**{¶32}**  A landowner cannot remain silent and permit another to spend money in reliance on a purported easement, when in justice and equity the landowner should have asserted his conflicting rights. If he fails to object, under these circumstances the landowner is estopped to deny the easement.  *See Jenkins v. Guy*, 4th Dist. Lawrence No. 03CA34, 2004-Ohio-4254, ¶ 20, and cases cited therein; *see also* Restatement of the Law, Property 3d (2000) 143 ("If injustice can be avoided only by establishment of a servitude, the owner or occupier of land is estopped to deny the existence of a servitude burdening the land when * * * the owner or occupier permitted another to use that land under circumstances in which it was reasonable to foresee that the user would substantially change position believing that the permission would not be revoked, and the user did substantially change position in reasonable reliance on that belief").

**{¶33}**  Pinkerton's predecessors in interest permitted the Salyers to spend money to gravel and maintain the easement over their 82-acre tract without objection.  If Pinkerton's predecessors believed that the right-of-way was their property and that the Salyers used it with mere license or permission, they had a duty to make that fact

known to the Salyers and their invitees through the years, but they did not. *See White v. Emmons*, 4th Dist. Scioto No. 11CA3438, 2012-Ohio-2024, ¶ 16 (upholding a trial court's finding of an easement by estoppel under comparable circumstances). Under these circumstances, the trial court's determination that the Salyers had established an easement by estoppel by clear and convincing evidence was not against the manifest weight of the evidence. Moreover, even if it was erroneous, it could only be harmless error in light of our affirmance of the grant of a prescriptive easement. We overrule Pinkerton's second assignment of error.

{¶34} Pinkerton's cross-appeal has no merit.

## C. Appeal

## Use of Easement

{¶35} In their appeal the Salyers claim that the trial court erred in limiting their use of the easement solely for hunting, farming, and agricultural purposes. An easement holder may not increase the burden upon the servient estate by engaging in a new and additional use of the easement. *Hawkins v. Creech*, 4th Dist. Adams No. 12CA938, 2013-Ohio-1318, ¶ 9, citing *Centel Cable Television Company of Ohio, Inc. v. Cook*, 58 Ohio St.3d 8, 567 N.E.2d 1010 (1991); *Hurst v. Baker*, 4th Dist. Gallia No. 99CA14, 2000 WL 1206533, *5 (Aug. 22, 2000) ("An owner of an easement has no right to increase the burden of the easement or to materially enlarge it"). Because the servitude created by adverse use arises from the failure of the landowner to take steps to halt the adverse use, interpretation of the prescriptive servitude focuses on the reasonable expectations of the landowner. The relevant inquiry is what a landowner in the position of the owner of the servient estate should reasonably have expected to lose

by failing to interrupt the adverse use before the prescriptive period had run.' " *Dunn*, 4th Dist. Pike No. 13CA837, 2013-Ohio-5116, at ¶ 18, quoting 1 Restatement of the Law 3d, Property (Servitudes), Section 4.1, Comment h, at 502.

**{¶36}** The trial court did not act in an arbitrary, unconscionable, or unreasonable manner in limiting the use of the easement to its historical, primary uses of hunting, farming, and other agricultural purposes.  The Salyers contend that they should be able to use the easement to access their property for any reasonable purpose. But a purpose that is not consistent with their historical uses in accessing their 46.191-acre tract would, by definition, be unreasonable.  Given that these equitable easements are not favored because of their confiscatory nature, the trial court did not abuse its considerable discretion in limiting the easement.  We overrule the Salyers' first assignment of error.

**{¶37}** The Salyers also contend that the trial court erred in limiting the easement to their private use.  The Salyers misunderstand the trial court's ruling.  "A private right-of-way easement may be used by the owner of the dominant tenement and the owner's family, tenants, servants, guests, and those transacting business with the dominant tenement."  *See Fruh Farms, Ltd. v. Holgate*, 442 F.Supp.2d 470, 477 (N.D.Ohio 2006), and authorities cited there.  Therefore, the owners of the dominant tenement are not the only persons who can use an access easement to their property—guests and invitees can also.  *Id.,* citing *Barker v. Contini*, 5th Dist. Tuscarawas No. 93-AP-070050, 1994 WL 75676, *2 (Mar. 8, 1994), and *Clement v. Fishler*, 28 Ohio App. 392, 393, 162 N.E. 706 (6th Dist. 1927).  Consequently, the Salyers' guests and invitees are entitled to use Salyers' easement for the purposes specified by the trial court as long as their access

and use remains reasonable and does not unduly burden the Pinkerton's land.  The trial court's designation that the easement be for their private use merely distinguished the easement from a public easement that would be accessible by the general public.  We overrule their second assignment of error.

## V. CONCLUSION

**{¶38}**  The trial court's declaration that the Salyers have an easement by prescription and estoppel over Pinkerton's property to access their property is not against the manifest weight of the evidence.  In addition, the trial court did not abuse its discretion in limiting the easement to its historical uses and to the Salyers.  Because neither the appeal nor the cross appeal have merit, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellants/Cross-Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal and cross-appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & McFarland, A.J.:  Concur in Judgment and Opinion.


For the Court



BY:  _____
        William H. Harsha, Judge



## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**