[Cite as *Combs v. Hobstetter-Hall*, 2016-Ohio-7407.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY


| | | |
|---|---|---|
| TRENA COMBS, EXECUTRIX OF, ESTATE OF EARL HOBSTETTER, et al., | : | |
| | : | Case No. 16CA2 |
| Plaintiffs-Appellants, | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| v. | : | |
| KATHLEEN HOBSTETTER-HALL, | : | |
| Defendant-Appellee. | : | RELEASED 10/17/2016 |

---

APPEARANCES:

Randall L. Lambert, Lambert Law Offices, LLC, Ironton, Ohio, for plaintiffs-appellants.

Steven M. Willard, Bannon, Howland & Dever Co., L.P.A., Portsmouth, Ohio, for defendant-appellee.

---

Hoover, J.


{¶ 1} Plaintiff-appellant, Trena Combs ("Combs"), as executrix of the estate of Earl Hobstetter ("Hobstetter"), and individually, appeals from the judgment of the Lawrence County Common Pleas Court denying her claims seeking rescission and cancellation of a deed. The deed in question was executed by Hobstetter and transferred property to his sister, Kathleen Hobstetter-Hall ("Hobstetter-Hall"), the defendant-appellee. For the reasons that follow, we affirm.

**I. Facts and Procedural Posture**

{¶ 2} On October 4, 2012, Hobstetter, who was eighty-four years of age, informed his sister, Hobstetter-Hall, that he wished to deed real property to her. He asked that she set-up a meeting with an attorney. Hobstetter-Hall contacted Attorney W. Mack Anderson, and on October 5, 2012, Hobstetter, Hobstetter-Hall, and Hobstetter-Hall's husband Orlyn Lowell Hall, met with Attorney Anderson to sign the deed conveying the property. Hobstetter signed the deed before leaving the meeting with Attorney Anderson.

{¶ 3} Five days after executing the deed, Combs, Hobstetter's second cousin and main caretaker, took Hobstetter to see Dr. Fabiana Farinetti for the first time due to increasing physical and mental limitations. Hobstetter entered the hospital nine days later, on October 19, 2012. During that time period Hobstetter was diagnosed, in part, with dementia. Hobstetter was released to the care of a nursing home, and then to Combs's home until he passed away on March 9, 2013.

{¶ 4} On May 17, 2013, Combs, as executrix of Hobstetter's estate and individually, filed a complaint challenging the validity of the deed on the basis of undue influence and incapacity of Hobstetter to make such a transfer. Specifically, the complaint requested that the deed be set aside and was based on allegations that Hobstetter "had dementia and Sundowner's Syndrome and other serious medical conditions which caused him to be easily influenced by others and rendered him incompetent to make any financial decisions or to knowingly make any transfers of his real estate."

{¶ 5} The matter proceeded to a trial before the magistrate. The court heard evidence from Combs, Dr. Farinetti, Belinda Jones Adkins (nurse), several of Hobstetter's friends and neighbors, Hobstetter-Hall, Hobstetter-Hall's husband Orlyn Lowell Hall, and Attorney

Anderson the attorney who prepared and notarized the deed.[1] The magistrate concluded that Combs had failed to prove that Hobstetter was incompetent to execute the deed on the date in question. The magistrate also concluded "there was no evidence of any undue influence". Accordingly, the magistrate recommended that the claims be dismissed.

{¶ 6} Combs filed objections to the magistrate's decision requesting that the trial court declare the deed invalid.

{¶ 7} After the transcript was prepared and both parties had filed their respective memorandum, the trial court made the following factual findings:

1.)     The plaintiff, Trena Combs, is a cousin to Earl Hobstetter. The plaintiff had acted as Mr. Hobstetter's care giver for a number of years;

2.)     The defendant, Kathleen Hall, is a sister to Earl Hobstetter;

3.)     The defendant and Earl Hobstetter had owned a one half interest in real estate that had been left to them by their parents;

4.)     On 01-23-04, Earl Hobstetter executed a will leaving his entire estate to the plaintiff;

5.)     On 10-05-12, Earl Hobstetter executed a deed transferring his interest in the property to his sister. The deed was prepared by W. Mack Anderson and was signed in the parking lot of Anderson & Anderson in the presence of W. Mack Anderson. Additional persons present were the defendant and her husband;

---

[1] The trial court agreed to accept the discovery depositions of Dr. Farinetti and Nurse Adkins in lieu of trial testimony.

6.)      Earl Hobstetter died in early 2013;

7.)      On 10-10-12, Dr. Farinetti examined Earl Hobstetter. Subsequent

examinations occurred on [1]2-20-12 and 01-09-13. Following the initial

exam on 10-10-12, Dr. Farinetti diagnosed Earl Hobstetter with dementia;

and

8.)      The plaintiff presented several witnesses which described Earl

Hobstetter's deteriorating physical and mental status through the last years

of his life.

{¶ 8} The trial court went on to find that Combs had failed to present evidence that established in a clear and convincing manner that Hobstetter was incompetent to execute the deed on October 5, 2012. While the trial court acknowledged that Hobstetter suffered from dementia on October 10, 2012, when he was first examined by Dr. Farinetti, and that the dementia was likely chronic as opposed to sudden onset, it also found that Dr. Farinetti acknowledged that persons with dementia could have periods of lunacy and that she could not say for certain whether Hobstetter was incompetent on the date of the execution of the deed. The trial court also found there was no indication from the attorney who prepared the deed and witnessed the signing of the deed that Hobstetter had any problem understanding the nature of the events nor was there any indication of undue influence. Finally, the trial court noted that the testimony of the friends and neighbors describing Hobstetter's condition both before and after the date of the execution of the deed was "wide ranging and sometimes inconsistent with one another." Consequently, the trial court ordered that Combs's claims be dismissed.

{¶ 9} Thereafter, Combs filed a timely notice of appeal. She now raises two assignments of error.

## II. Assignments of Error

{¶ 10} On appeal, Combs raises the following assignments of error for review:

First Assignment of Error:

> THE COURT'S FINDING THAT THE PLAINTIFF HAD FAILED TO PRESENT FACTS THAT ESTABLISH ANY CLEAR CONVINCING EVIDENCE THAT MR. HOBSTETTER WAS INCOMPETENT TO EXECUTE THE DEED ON OCTOBER 5, 2012 WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

Second Assignment of Error:

> THE COURT ERRED IN FAILING TO PROPERLY CONSIDER EVIDENCE SUBMITTED WHICH RELATED TO FACTS THAT OCCURRED WITHIN A REASONABLE TIME BEFORE AND AFTER THE EXECUTION OF THE DEED IN ORDER TO DETERMINE MR. HOBSTETTER'S MENTAL CONDITION ON THE DATE IN QUESTION.

## III. Law and Analysis

{¶ 11} The issues raised by both of Combs's assignments of error are so interrelated that this Court chooses to address them together. Through these assignments of error, Combs contends that the trial court's judgment dismissing his incompetency claim[2] was against the manifest weight of the evidence.

## A. Standard of Review

{¶ 12} When an appellate court reviews whether a trial court's decision is against the manifest weight of the evidence, the court weighs the evidence and all reasonable inferences,

---

[2] While the trial court also ordered that Combs's undue influence claim be dismissed, Combs does not challenge that ruling on appeal. Therefore, the undue influence claim will not be discussed in the present appeal.

considers the credibility of witnesses and determines whether in resolving conflicts in the

evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice

that the judgment must be reversed. *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179,

972 N.E.2d 517, ¶ 20 (clarifying that the same manifest-weight standard applies in civil and

criminal cases); *Pinkerton v. Salyers,* 4th Dist. Ross No. 13CA3388, 2015-Ohio-377, ¶ 18, citing

*In re M.M.,* 4th Dist. Meigs No. 14CA6, 2014-Ohio-5111, ¶ 22 (applying this standard in a case

that involved a burden of proof of clear and convincing evidence). "Because the trial court is best

able to view the witnesses, observe their demeanor, gestures, and voice inflections, and use those

observations in weighing the credibility of the witnesses, a reviewing court will presume that the

trial court's findings of fact are accurate." *Cadwallader v. Scovanner,* 178 Ohio App.3d 26,

2008-Ohio-4166, 896 N.E.2d 748, ¶ 9 (12th Dist.), citing *Seasons Coal Co. v. Cleveland,* 10

Ohio St.3d 77, 461 N.E.2d 1273 (1984). "We will reverse a judgment as being against the

manifest weight of the evidence only in the exceptional case in which the evidence weighs

heavily against the judgment." *Pinkerton* at ¶ 18.

{¶ 13} Additionally, as this Court previously explained in *State v. Murphy,* 4th Dist. Ross

No. 07CA2953, 2008–Ohio–1744, ¶ 31:

> It is the trier of fact's role to determine what evidence is the most credible and
>
> convincing. The fact finder is charged with the duty of choosing between two
>
> competing versions of events, both of which are plausible and have some factual
>
> support. Our role is simply to insure the decision is based upon reason and fact.
>
> We do not second guess a decision that has some basis in these two factors, even
>
> if we might see matters differently.

**B. The Law on Rescission and Cancellation of a Deed Due to Lack of Capacity**

{¶ 14} "A party seeking rescission and cancellation of a deed because of undue influence or lack of capacity has the burden of proof by clear and convincing evidence." *McCluskey v. Burroughs*, 4 Ohio App.3d 182, 446 N.E.2d 1143 (7th Dist.1982), citing *Willis v. Baker*, 75 Ohio St. 291, 79 N.E. 466 (1906), paragraph one of the syllabus. "Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established." *In re Estate of Haynes*, 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986). "If the plaintiff satisfies this [clear and convincing] burden, the defendant must then show that the grantor understood the nature and effect of the transfer and that she conveyed her residence voluntarily." *Clayton v. Schaffer*, 3d Dist. Logan No. 8-03-07, 2003-Ohio-5013, ¶ 6.

{¶ 15} A deed will be declared null and void and set aside where the evidence discloses that the grantor lacked mental capacity to transact business or to make the deed. Conversely, a deed executed by one having the ability to understand the nature, effect, and immediate consequences of the transaction is valid and binding and cannot be set aside for grantor's lack of mental capacity. Evidence that the grantor suffers from senility or eccentricity, or even partial impairment of his mental faculties, is not necessarily sufficient to incapacitate him to execute the deed, if he has sufficient mental capacity to comprehend the nature of the transaction and to protect his own interest. *Monroe v. Shrivers*, 29 Ohio App. 109, 112, 162 N.E. 780 (5th Dist.1927).

**C. Analysis**

{¶ 16} Combs first argues that the trial court erred by discounting the testimony of Hobstetter's friends and neighbors while at the same time placing greater weight on the testimony of Attorney Anderson. Specifically, Combs argues that the testimony elicited from Hobstetter-Hall's witnesses, including the testimony of Attorney Anderson, was so extreme and counter to the testimony of the friends and neighbors that it was clearly biased and not reliable.

{¶ 17} Hobstetter's neighbors and friends, all of whom knew and frequently saw Hobstetter, were all of the opinion that Hobstetter was not of sound mind or capable of transacting ordinary business in the months before he was hospitalized in October 2012. In particular, the neighbors and friends testified that in the several months prior to the contested deed transaction they noticed a change in Hobstetter's demeanor, ability to carry on a conversation, ability to recognize known individuals, ability to remember current events, ability to maintain his balance, and his ability to walk. They also testified that while Hobstetter was always a bit eccentric, his behaviors became more bizarre in the summer and fall of 2012. In contrast, W. Mack Anderson, the attorney who prepared and witnessed the execution of the deed, testified that in his opinion Hobstetter understood the nature, effect, and immediate consequences of the deed. Attorney Anderson testified that he spoke with Hobstetter on the date of the deed transaction for a few minutes, explained to him the effects of the transaction, and that he was comfortable that Hobstetter knew the nature of his property and understood what he was doing. Attorney Anderson also testified that Hobstetter knew that he and his sister jointly owned the property, that they had inherited the property from their parents, and that Hobstetter did not appear confused or agitated. Finally, Attorney Anderson testified that he would not witness or notarize a legal document if he felt that the person did not understand what he or she was signing.

{¶ 18} As stated above, all questions that surround the weight of the evidence and witness credibility are issues that the trier of fact must determine. *See e.g. State v. Frazier,* 115 Ohio St.3d 139, 2007–Ohio–5048, 873 N.E.2d 1263, ¶ 106; *State v. Dye,* 82 Ohio St.3d 323, 329, 695 N.E.2d 763 (1998); *State v. Williams,* 73 Ohio St.3d 153, 165, 652 N.E.2d 721 (1995). The case sub judice was decided from a bench trial; meaning the trial court served as trier of fact. Thus, the trial court could opt to believe all, part or none of the testimony of any witness who appeared before it. *See State v. Mockbee,* 2013–Ohio–5504, 5 N.E .3d 50, ¶ 13 (4th Dist.); *State v. Colquitt,* 188 Ohio App.3d 509, 2010–Ohio–2210, 936 N.E.2d 76, ¶ 10, fn.1 (4th Dist.); *State v. Nichols,* 85 Ohio App.3d 65, 76, 619 N.E.2d 80 (4th Dist.1993). We generally defer to the trier of fact on evidentiary weight and credibility issues because the trier of fact is better positioned to view the witnesses and to observe their demeanor, gestures and voice inflections and then to use those observations to weigh witness credibility. *See Myers v. Garson,* 66 Ohio St.3d 610, 615, 614 N.E.2d 742 (1993); *Seasons Coal Co.,* 10 Ohio St.3d at 80, 461 N.E.2d 1273.

{¶ 19} Here, the trial court was quite clear that it did not find the testimony of the friends and neighbors to be credible. Specifically, the trial court called the friends and neighbors testimony "wide ranging and sometimes inconsistent with one another." On the other hand, the trial court explicitly found Attorney Anderson's testimony to be more credible on the issue of capacity stating that Attorney Anderson was "[t]he most independent person present" and that he "was very clear in that Mr. Hobstetter knew and understood what he was doing in regard to the execution of the deed." As the trier of fact, it was clearly within the trial court's prerogative to determine the weight of the evidence and to determine witness credibility. According, we reject Combs's first argument.

{¶ 20} Next, Combs argues that that trial court erred by ignoring evidence regarding Hobstetter's mental condition in the periods both before and after the date of the execution of the deed. Combs is correct, in that "evidence submitted which is related to acts that occur within a reasonable time before or after the conveyance of property is admissible to cast light upon the party's mental condition on the date in question." *Clayton*, 2003-Ohio-5013, at ¶ 11. However, it appears that the trial court did not ignore this evidence; but rather found the witnesses to be unpersuasive.

{¶ 21} Again, Combs relies on the testimony of the friends and neighbors, and argues that their testimony "overwhelming" shows that Hobstetter was not of sound mind or capable of transacting ordinary business for several months before the deed execution. The trial court, however, did not ignore this evidence. Rather, the trial court appears to have discounted the testimony because of inconsistencies. As detailed above, this clearly was within the trial court's prerogative as trier of fact.

{¶ 22} Combs also contends that the statements of Dr. Farinetti concerning Hobstetter's condition on October 10, 2012, should have been considered by the trial court to help determine Hobstetter's condition just five days prior when he executed the deed. Again, despite Combs's argument to the contrary, the trial court did consider the testimony of Dr. Farinetti. In its ruling, the trial court explicitly found that Dr. Farinetti diagnosed Hobstetter with dementia following the initial examination on October 10, 2012. The trial court also explicitly determined that based on Farinetti's testimony it appeared that Hobstetter suffered from "chronic" dementia. However, the trial court also gave great weight to other portions of Dr. Farinetti's testimony, explicitly stating in its ruling as follows:

Dr. Farinetti's testimony indicates that a person suffering from dementia can have periods of lunacy and the doctor was not able to give an opinion as to Mr. Hobestetter's [sic] mental condition on the date of the execution of the deed. The doctor did indicate the persons present at the time of the execution of the deed would be in the best position to gauge and determine Mr. Hobstetter's mental state at that time.

Our review of the trial transcript confirms the trial court's characterization of the evidence.

{¶ 23} Thus, it appears that the trial court did give full consideration to Dr. Farinetti's testimony regarding Hobstetter's condition upon the initial examination of October 10, 2012. However, the trial court also considered Dr. Farinetti's testimony that she could not conclusively say that Hobstetter's condition was the same on October 5, 2012, when he executed the deed. Given this record evidence, we do not believe that the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed.

## IV. Conclusion

{¶ 24} For the foregoing reasons we hereby overrule Combs's assignments of error. Having considered all of the errors assigned and argued, we conclude that this is not the exceptional case in which the evidence weighs heavily against the judgment. Accordingly, the judgment of the trial court is affirmed.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and *Stautberg, J.: Concur in Judgment and Opinion.

For the Court

By:_____
          Marie Hoover, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**

*Judge Peter J. Stautberg from the First Appellate District, sitting by assignment of the Supreme Court of Ohio in the Fourth Appellate District.